E-FILED
Tuesday, 31 January, 2017  08:25:17 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MELVIN K. CHAPMAN, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 14-3296 |
| | ) | |
| SIMPLEX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

Plaintiff Melvin K. Chapman, Sr., filed a two-count Complaint asserting that his employer, Simplex, Inc., discriminated based on race by denying him economic opportunities in violation of 42 U.S.C. § 1981 (Count I) and 42 U.S.C. § 2000e et seq. (Count II).

Pending before the Court is the Defendant's Motion for Summary Judgment.

It is allowed.

## I. FACTUAL BACKGROUND

### (A)

Melvin K. Chapman ("the Plaintiff" or "Chapman") is an adult black male. Simplex, Inc. ("the Defendant" or "Simplex") is located within this judicial district and is engaged in the business of manufacturing load banks and fuel supply systems that work in conjunction with backup power control and delivery.

On January 12, 2006, the Plaintiff applied for an auto Computer Assisted Drawing ("CAD") technician position that Simplex advertised in the State Journal-Register. The Defendant's president testified he does not know if there is a job description for CAD technician positions.

The Plaintiff did not possess a bachelor's degree or an associate's degree. Although Chapman's application materials provided that he had completed numerous CAD courses, he did not have a certificate of completion in computer-aided drafting or any experience. Chapman still had one additional class to complete in blue print reading before he could obtain a certificate of completion as a CAD technician. Therefore,

Chapman had no degree, no job experience and no certificate of completion as an auto CAD technician when he applied at Simplex for the auto CAD position.

The cover letter and resume did reveal that Chapman had extensive welding and fabrication experience.  Chapman admits he had 30 years of experience as a welder when he applied at Simplex and was much more qualified as a welder than a CAD technician.  Simplex hired Chapman at the age of 62 to work as a welder.  Chapman may have been the only African-American working in the mechanical engineering department at Simplex.

On July 2, 2007, the Defendant promoted the Plaintiff to a CAD technician.  Chapman claims Simplex discriminated against him based on race when Simplex hired him as a welder, instead of a CAD technician, because Simplex hired Aaron Antonacci in 2008 with no more experience or credentials than Chapman had when he applied at Simplex to be a CAD technician.  After hearing Antonacci discuss his education and his experience in the break room at Simplex in 2008, Chapman concluded he

had been the victim of discriminatory hiring practices in 2006.  However, Chapman never reported his beliefs or perception to his supervisor or management.  Chapman also did not file a complaint with any administrative agency or initiate litigation.

By the time of his promotion to CAD technician, the Plaintiff had a CAD certificate.  During or before his employment with Simplex, Chapman had applied only at a "temp" agency to become a CAD technician.

On or about March 15, 2011, Chapman said he saw a noose hanging from the side of a file cabinet at co-worker Jeff Strawn's desk while Chapman was getting some documents or blueprints.  Chapman said he asked Strawn if that was a fisherman's knot.  Strawn stated that if Chapman found the knot offensive, he would take it down.  Chapman replied he found the knot offensive and Strawn immediately took the knot down.  It was well over three years before Chapman mentioned the noose to Simplex officials–in September 2014.  Chapman did not report the incident to a supervisor or management or raise the allegation at the fact-finding conference.

4

In January 2010, following the earthquake in Haiti, the Plaintiff reported that Jeff Strawn stated that the people on the news the previous night looked "like fu****g monkeys."  Chapman admitted he did not report the comment to his supervisor or management.  Chapman did not say anything to Strawn at that time.  Moreover, Chapman did not bring it up at the fact-finding conference before the Illinois Department of Human Rights.  Chapman did not complain about Strawn's comment for over four years.

(B)

In July 2007, the Plaintiff's first performance appraisal as a draftsman rated his "overall rating" as below expectations.  The accuracy, clarity, consistency, and thoroughness of work, as well as the quality control and attention to detail were below expectations.  Chapman's ability to meet productivity goals/standards, and his ability to effectively handle pressure and stress were below expectations as well.  The appraisal also stated that Chapman "needs to pay closer attention to details.  Drafting skills require further refinement to move on to more complicated tasks.  Pace of work

5

must be improved without compromising accuracy."

On June 1, 2008, the Defendant hired Aaron Antonacci through a "CAD Technician Internship." Simplex employed Antonacci as an intern as part of a CAD certificate program at Lincoln Land Community College ("LLCC"), where Antonacci had a grade point average of 3.5 out of 4.0. Simplex received 50% reimbursement of Antonacci's student's salary during the cooperative work study experience for that semester according to Mary Beth Ray, the Director of Career Development for LLCC.

The Plaintiff received his next job performance appraisal in July of 2008. Chapman was again rated below expectations in "quantity of work" and "quality of work." Comments on the July 2008 Performance Appraisal include "details and accuracy on DWG features require continuous diligence. Pace of work has continued. Continued improvement is expected." The overall rating was meets expectations. Areas needing attention and improvement were identified as "pace of work and attention to detail requires continuous diligence for improvement. Double check flat patterns for accurate and complete feature placement."

6

The August 2008 Performance Appraisal for Aaron Antonacci had no below expectation marks and included several exceeds expectations ratings. The overall rating for Antonacci was meets expectations and the appraiser's comments stated, "Aaron has done a good job of learning our products and procedures and needs to gain a deeper understanding of our product design."

The Plaintiff's next performance appraisal in July 2009 did not include any below expectation notations. Comments in the performance appraisal included an assessment that Chapman's "work quality and pace has improved. Continued improvement expected." Chapman's next performance appraisal in July 2010 had an overall rating of "meets expectations." Areas needing attention and improvement included "continued improvement of pace of work and attention to detail is expected."

Aaron Antonacci's August 2010 performance appraisal did not include an overall rating but did include 12 areas where he exceeded expectations. Comments included in the area of improvement and major

accomplishments in Antonacci's appraisal stated "Aaron does not have an electrical background, but has done a very good job of learning the basics." The appraiser's comments also stated "Aaron is able to take basic instructions (start from WOXXXXX and change these things) and produce accurate drawings.  This ability increases the throughput in engineering."

The Plaintiff's July 2011 Performance Appraisal did not include any substandard performance categories, but did include the following comments for areas to improve upon: "encourage renewed commitment to accurate speedy completion of projects."

Aaron Antonacci's August 2011 Performance Appraisal included five areas of exceeds expectations and additional appraisal comments stating: "Aaron does an excellent job.  Works very efficiently.  Very few errors. Able to work with minimal guidance."

In January 2012, the Defendant promoted Aaron Hashman from a welder position to a CAD technician and paid Hashman $14.10 an hour. Hashman, a Caucasian, had worked as a welder at Simplex from May 19, 2008, until he was promoted to CAD technician in January 2012.  It took

Hashman almost four years to be promoted to CAD technician, as compared to Chapman's year and-a-half. Chapman had been getting paid thirty cents ($.30) more per hour than Hashman at the time of Hashman's promotion to a draftsman, making $14.40 an hour since July 27, 2011, compared to the $14.10 per hour Hashman was paid.

The Plaintiff's July 2012 Performance Appraisal once again included comments under his "areas to improve upon" which stated "improvement of accuracy, pace of work and attention to detail are always expected."

Aaron Antonacci's August 2012 Performance Appraisal included five "exceeds" ratings and stated the following, "Aaron is our 'go to' guy in drafting. He gets all the difficult projects and does an excellent job."

In April 2012, four months after Aaron Hashman had become a drafter in the electrical engineering department, his performance appraisal included two substandard ratings because Hashman was still learning the products and not familiar with end users. Hashman's appraisal also stated under management comments that "we will have Aaron spend some time in wiring, assembly, and testing to become more familiar with our products.

He has expressed an interest in attending an electrical class at LLC."

In September 2012, Simplex employee Ernie Poani received a performance appraisal in which he was rated adequate in all performance measures, but which included additional comments stating his "work speed needs to increase."

On August 23, 2012, Simplex completed its last performance appraisal on the Plaintiff the morning of his termination from employment, which again included comments under "Areas to Improve Upon" stating: "Attention to detail, increased pace of work and improved accuracies always expected."  Garland Stevens, Chapman's immediate supervisor, testified that he did not know Chapman was going to be terminated in the afternoon when he completed Chapman's performance appraisal that morning. However, Stevens reiterated that Chapman needed to improve the pace of his work and also be more accurate in the work that he performed.  Simplex President Thomas Debrey testified Stevens previously had advised him that "Melvin's workload was low, that he was a low to poor performer at CAD and that he largely was running copies all day."

Garland Stevens testified that Chapman's duties included drafting projects in addition to scanning.  Moreover, Chapman had completed CAD projects.  The engineer log does not have a start date and a completion date for each of Chapman's projects.  Stevens testified that there is not a listing of errors for each of Chapman's projects.  The Defendant states, however, that accuracy was expressly identified in writing as an area of improvement in five of Chapman's last six performance appraisals.

(C)

On August 15, 2013, Tom Debrey emailed Steve Cappellin to inquire about Melvin Chapman's productivity.  The email stated:

> How do we get a handle on what Melvin actually spends his 8 hours doing?  I have asked Garland, and Garland will represent that he is the glue that holds the group together.  I have no way of quantifying what Melvin actually does other than run copies all day.

> We are overstaffed and need to cut low performers.

Steve Cappellin responded the same day as follows:

> I will log onto his computer after-hours tonight and see what is there.  Will also inquire of Joe about what he sees, hears and thinks about his productivity.  He certainly does not appear to be stressed with his workload but I have limited contact.

11

> In 4 of the last 5 paychecks since June, he has worked overtime that has averaged @7.7 hours/week for those weeks . . . the week without overtime was due to vacation taken.  Otherwise, his overtime for the year is negligible.

Debrey did not know what Cappellin found.  Cappellin testified he did not find anything specific in his review of the computer.

When asked to explain whether he understood his performance was deficient in any way based on the numerous comments stating his pace of work needed to increase, Chapman explained that if his overall rating was meets expectations, he could not understand how he was underperforming, notwithstanding the repeated comments about his speed or accuracy.

On August 22, 2013, Debrey emailed Cappellin directing him to terminate Brian Huston, Ernie Poani and Melvin Chapman the following day.  The email stated in part:

> In every case, reason is fall off in business.  Secondary reason in all 3 cases is low productivity.  So, I think you need to be blunt and state it thusly.  Business is down significantly and we need to reduce labor cost.  Therefore we measure the relative productivity and separate the low performers.  WE need to be explicitly [sic] lest we be accused of age discrimination.  I have detailed schedules to support the productivity position.  You have dialed financials to support low business.

On August 23, 2013, Simplex laid off three employees: (1) Melvin Chapman; (2) Ernest Poani; and (3) Brian Huston.  Each employee's Termination Summary cited: "reduction in business, coupled with low productivity/performance.  Business is down significantly and we need to reduce our labor costs by measuring the relative productivity and separating the low performers."  Chapman's summary also stated, "Melvin has demonstrated no interest in growth of his responsibilities, functions at a casual pace, and is a low performer."  Steve Cappellin testified that Simplex President Tom Debrey did not make any changes to his proposed wording on the termination forms.

Simplex terminated 62-year-old Ernest Poani after he had worked as a draftsman at Simplex since March 2008.  Poani was Caucasian, had significant training and job experience in CAD drafting, and a certificate of completion from the U.S. Department of Labor's Apprenticeship Training Program as a Draftsman.

Simplex terminated 56-year-old Brian Huston after he had worked at Simplex for about a year-and-a-half.  Huston is Caucasian, had an

associate's degree and significant engineering experience working for others and for himself.

Tom Debrey stated the idea for the reduction in force originated from him.  Debrey inquired on numerous occasions as to Melvin Chapman's productivity at work.  Steve Cappellin, Simplex's Chief Financial Officer, had very little contact with Chapman.  Cappellin did not talk to Garland Stevens about Chapman's termination.  However, Cappellin spoke to Joe Xavier, the Engineering Manager, who intimated that Chapman was "not the fastest guy in the toolbox" and his output was not the same as other employees.  Cappellin's comments on Chapman's termination document were perceptions of Chapman's work style and his work ethic.

Steve Cappellin explained that in 2012 Simplex had bulked up its work force to reflect the volume and the complexity of the work it had been doing.  However, Cappellin stated that in 2013, there was a decrease in business and a decrease in net revenues so Simplex decided to cut their engineering force by about 10%.  Cappellin explained that 10% would have meant a cutback of 3 or 4 employees in 2013.  This number did not include

the temporary workers on the production force which are used as a supplement to the permanent work force and allows Simplex to scale up or down rather quickly.  Simplex had already laid off most of its temporary workforce at the time Chapman, Poani and Huston were let go.

Both Garland Stevens and Steve Cappellin testified that none of the individuals who were laid off have been replaced.  Stevens also testified that Chapman's duties were taken over by other CAD technicians in the department.

Tom Debrey also testified that at no point in time during Chapman's tenure with Simplex did he ever complain to a supervisor or manager about any discriminatory treatment.  Although both Debrey and Cappellin wanted to be explicit in the reasons for the termination of the three employees to ensure Simplex would not be accused of age discrimination–given the age of all three employees–the issue of race discrimination never entered their minds.

Brian Spencer, HR Manager, testified that the first time he found out about Melvin Chapman's termination was on the afternoon of his dismissal.

15

Simplex did not have any specific procedures for implementing a reduction in force.

(D)

On September 9, 2013, the Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights and EEOC alleging age discrimination and race discrimination.  Brian Spencer signed a response to the charge stating that job performance was not a factor in Chapman's termination.  The Defendant explains this is because Chapman was laid off as part of a reduction in force and not due to misconduct of any type. Simplex states that, to the extent Chapman's pace of work and attention to detail played a role in who would be laid off as part of a reduction in force, Chapman's supervisor had noted on five of the last six performance appraisals that pace of work and attention to detail were areas on which Chapman needed to improve.

In his charge, Chapman identified Aaron Antonacci, Aaron Hashman and Ernie Poani as employees who had been treated more favorably than him under comparable circumstances.  Poani was laid off simultaneously

16

with Chapman for identical reasons.  Both Chapman and Poani were hourly employees.

Aaron Antonacci was initially hired through an internship program through Lincoln Land Community College and his performance proved so exceptional that Simplex maintained his employment.  Antonacci's August 2013 performance appraisal included five outstanding performance ratings in competency with comments like:

> It is rare to find an error in Aaron's work.  This has been noticed by others in engineering also.  Takes initiative to create and maintain standard drawings.  Always willing to help others.
> Calls vendors to determine best component.  Then provides recommendation.
> Aaron does an outstanding job.  He can handle complex projects with minimum instructions, and produces virtually error free results.

Aaron Hashman's 2013 Performance Appraisal had two ratings in outstanding performance and included the following comments:

> Aaron has made good progress learning all the features & options of our products.  He needs to grow his product knowledge.
> Aaron is the first person learning Solidworks on the fuel system product line.  He's made very good progress while still keeping up with other responsibilities.  Aaron has also made excellent progress in general knowledge of our engineering

17

processes.

Hashman's January 2014 Performance Appraisal included comments such

as:

> Aaron has been proactive in developing Solidworks models for our equipment.  These models will be used by all engineering personnel.
> Aaron's skills have grown considerably since joining the engineering department.  He needs to focus on further developing his electrical skills.  Specifically, understanding and applying relay logic.

Simplex paid Chapman a higher hourly rate than Hashman at the time of

Chapman's discharge.

The Plaintiff also alleged he "was not provided training or upgraded

computers comparable with the other CAD technicians."  He also told

Garland Stevens that his computer did not have the capability to run

SolidWorks.  Chapman later admitted, however, that he did not know the

difference between the performance of any of the computers used by the

CAD technicians and that he did receive the same initial "Solidworks"

training the other CAD technicians received.

In the Complaint, the Plaintiff asserts the Defendant discriminated

18

against him on the basis of race.  Simplex moves for the entry of summary judgment as to the Plaintiff's claims, alleging that most are either procedurally barred or time barred.  Simplex further contends that Plaintiff cannot prevail under either the direct or indirect method of proof.  Finally, Simplex provided a reasonable explanation for Chapman's explanation. The Defendant alleges the Plaintiff is unable to create a genuine issue of material fact regarding whether the asserted reasons are pretext.

## II. DISCUSSION

### A. Legal standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  The Court construes all inferences in favor of the non-movant.  See Siliven v. Indiana Dept. of Child Services, 635 F.3d 921, 925 (7th Cir. 2011).  To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture."  See Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted).

19

Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion.  See Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008).  Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor.  See id.

### B. Analysis

Title VII prohibits an employer from discriminating against an employee based on the "individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000 e-2(a)(1).   "Section 1981 prohibits race discrimination in the making or forming of contracts."  Smiley v. Columbia College Chicago, 714 F.3d 998, 1002 (7th Cir. 2013).  At this stage, courts typically use the same legal standards in considering Title VII and § 1981 race discrimination claims.  See id.

The United States Court of Appeals for the Seventh Circuit recently emphasized that in job discrimination cases such as this, a court's role is to determine "[w]hether a reasonable juror could conclude that [Chapman] would have kept his job if he had a different [race] and everything else had

remained the same." Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 764

(7th Cir. 2016). The court further explained:

> Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself–or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect."

Id. at 765.

The Plaintiff here relies on circumstantial evidence. The Seventh

Circuit and courts within its jurisdiction have often analyzed discrimination

cases by addressing whether a plaintiff has presented a "convincing mosaic"

of circumstantial evidence. In Ortiz, the Seventh Circuit reiterated that the

phrase "convincing mosaic" is not a legal test and overruled previous

opinions "to the extent that they rely on "convincing mosaic" as a

governing legal standard." 834 F.3d at 765. The phrase is a metaphor

describing a case built on circumstantial evidence. See Lane v. Riverview

Hospital, 835 F.3d 691, 695 (7th Cir. 2016). "The core issue is whether

[Chapman] has offered evidence that would allow a reasonable jury to infer

that he would not have been [terminated] if he were not African American and everything else remained the same." Id.

The Court concludes that the Plaintiff has not offered any such evidence. The record establishes that Simplex President Tom Debrey believed that a reduction in force was necessary because of a decrease in business in 2013. Simplex CFO Steve Cappellin testified that workers were added in 2012 because of the volume and complexity of the work the Defendant was doing at the time. Because there was a decrease in business and net revenues in 2013, however, Debrey and Cappellin determined that Simplex needed to cut the engineering force by about ten percent. This meant a cutback of three or four employees.

The Plaintiff has failed to offer evidence that would allow a reasonable jury to infer that he would not have been laid off if he were not African-American. At the same time the Defendant terminated two Caucasians who, like Chapman, were perceived as low performers. Although Chapman's overall performance may have been noted as "satisfactory," five of his previous six performance appraisals stated that he needed to improve

22

in the areas of pace of work and attention to detail.  The Defendant claims that Chapman's "satisfactory" performance meant that he likely would have remained employed had Simplex not needed to reduce its force.  Simplex was faced with that decision and, based on Chapman's performance appraisals, the record suggests that he and the other terminated employees were appropriate candidates for termination.

The Plaintiff does not dispute that in 2013, Simplex's business and revenues were down from the previous year.  There is no question that this would qualify as a legitimate business reason for a reduction in force.  Simplex laid off the majority of its temporary workers, in addition to Chapman, Poani and Huston.  None of the individuals who were laid off have been replaced.  The duties of Chapman and the other employees were spread among other employees.  These undisputed facts are consistent with Simplex's assertion that a reduction in force was appropriate given the state of business in August 2013.

Although the Plaintiff alleges that the Defendant used the reduction in force in an impermissible manner to "target" a black man, there simply

23

is no evidence that was the case.  The same reasons were given for the simultaneous termination of two white men.  Accordingly, it is difficult to see how the impetus for the reduction in force could have been to ensure Chapman's dismissal.

Additionally, the Plaintiff cannot show that similarly situated employees in a non-protected class were treated more favorably in connection with the reduction in force.  Aaron Hashman, who is Caucasian, received a more favorable evaluation than Chapman in 2013.  Hashman also received a favorable evaluation in January 2014.  In contrast to Chapman, there were no documented concerns about Hashman's pace of work and attention to detail.[1]  Chapman alleges that Simplex did not have a job description for CAD technicians or a defined compensation policy.  In those respects, however, Chapman is being treated no different than other CAD technicians.   Accordingly, the Court concludes that the foregoing facts do not support the Plaintiff's discrimination claim.

---

[1]As Simplex notes, Chapman was treated more favorably than Hashman in at least one respect.  Chapman was promoted from welder to CAD technician two years faster than was Hashman.

A portion of Chapman's termination document states, "Melvin has demonstrated no interest in growth of his responsibilities, functions at a casual pace, and is a low performer."  The Plaintiff contends that this document–written by Cappellin and approved by Debrey–reflects racial stereotypes and suggests that blacks to do not seek self-improvement "to pull themselves up by their bootstraps."  However, the statement that Chapman works at a casual pace and is a low performer is consistent with a number of his evaluations.  As for the statement that Chapman has not demonstrated any interest in growth of his responsibilities, Cappellin testified this perception was based on his conversations with individuals who were familiar with Chapman's work.

It is true that the Plaintiff's supervisor, Garland Stevens, did not know that Chapman would be terminated until Brian Spencer called and told him to send Chapman downstairs.  While this might suggest that not everyone at Simplex was on the same page regarding the reduction in force, the Court notes that Stevens also believed that Chapman needed to improve the pace of his work, exhibit more attention to detail and increase

the accuracy of his work, as reflected in the evaluations.

Although the Plaintiff alleges he did not have adequate computer training, Chapman acknowledges that he did not know the difference between the performance of any computers used by the CAD technicians and that he did receive the same initial "Solidworks" training the other CAD technicians received.   Chapman suggests that other employees received additional Solidworks training.  However, Chapman did not recall going to Garland Stevens or management and requesting further training. Accordingly, Simplex may not have known that Chapman believed he needed additional training.

The Plaintiff also points to the acts of a co-worker, Jeff Strawn, who displayed a noose in the workplace in 2011 and made racially offensive comments in his presence in 2010.  These incidents involved a co-worker, not Simplex management, and were not communicated to management until September 2014.  Simplex management was not aware of these incidents involving Strawn until more than one year after Chapman was laid off.  Accordingly, these occurrences do not support the Plaintiff's

discrimination claim.  To the extent Chapman is alleging a hostile work environment claim, the Defendant would be entitled to summary judgment because he cannot establish a basis for employment liability.[2]  See Orton-Bell v. Indiana, 759 F.3d 768, 773 (7th Cir. 2014) (noting the elements for hostile work environment claims).

The Plaintiff further alleges there are informal procedures not to rehire after a reduction in force.  Therefore, Chapman was not eligible for rehire and, based on the negative wording on the termination materials, he would not have been able to provide documentation to an employer to account for his employment at Simplex.  Once again, the Plaintiff is not being treated any differently from the other employees who were terminated.  Accordingly, the Plaintiff cannot show it was based on race.

### III. CONCLUSION

After construing all inferences in favor of the Plaintiff, the Court concludes that the Defendant is entitled to summary judgment on the Plaintiff's race discrimination claims under § 1981 and Title VII.  The

---

[2]As the Defendant alleges, the Plaintiff's hostile work environment claims also are procedurally barred and time-barred.

Defendant had a legitimate and non-discriminatory reason–a reduction in force based on financial circumstances–and terminated the Plaintiff and two white employees.  The Plaintiff has not created a genuine issue of material fact that his termination was a pretext for discrimination.

Ergo, the Motion of Defendant Simplex, Inc. for Summary Judgment [d/e 33] is ALLOWED.

The final pretrial conference and trial setting are Canceled.

This case is closed.

The Clerk will enter a Judgment in favor of the Defendant and against the Plaintiff.

ENTER: January 30, 2017

FOR THE COURT:

 /s/ Richard Mills
Richard Mills
United States District Judge